**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

NANCY PAHR,                          )
     Plaintiff,                     )
                        )
     v.                             )          CAUSE NO.: 2:13-CV-238-PRC
                        )
CAROLYN W. COLVIN,                   )
Acting Commissioner of the           )
Social Security Administration,      )
     Defendant.                     )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Nancy Pahr on July 16, 2013, and the Social Security Opening Brief of Plaintiff [DE 12], filed on November 1, 2013. Plaintiff challenges the March 29, 2012 decision of the Administrative Law Judge (ALJ) that she is not disabled under the Social Security Act. The Commissioner filed a response brief on February 21, 2014, and Plaintiff filed a reply on March 7, 2014.

## I. Background

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on October 6, 2010, alleging that she has been disabled since May 7, 2010, due to degenerative disc disease, arthritis in her knees, migraine headaches, fibromyalgia, ulcers, thyroid disorder, tendinitis, anemia, and sleep apnea. She is also morbidly obese, with a BMI of 48.5. Her applications were denied on January 10, 2010, and, upon reconsideration, on March 1, 2011.

She filed a timely request of hearing, which was held in Valparaiso, Indiana, before ALJ Henry Kramzyk on February 21, 2012. The ALJ heard testimony from Plaintiff and her husband as well as from vocational expert (VE) James Lozer. Plaintiff was represented at the hearing by

attorney Charles Marlowe.[1]

On March 29, 2012, the ALJ issued a written decision denying Plaintiff's claims for disability benefits, making the following findings.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since May 7, 2010, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, with lumbar herniation and bulging, and a history of surgery; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925, and 416.926)

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 10 CFR 404.1567(a) and 416.967(a) as the claimant is able to lift and/or carry 10 pounds occasionally, stand and/or walk for two hours in an eight hour workday and sit for six hours in an eight hour workday, except: the claimant may never climb ladders, ropes or scaffolds, may occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, may sit for 15 minutes and then be able to stand for one or two minutes as a relief from sitting before sitting back down.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1567 and 416.965)

7. The claimant was born on in 1964, and was 46 years old,

---

[1] Plaintiff and her husband appeared by video conference.

which is defined as a younger individual age 45–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 7, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On May 22, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On July 16, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [the court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [the ALJ's] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

Plaintiff marshals five arguments for why the ALJ's decision should be remanded for further consideration or simply reversed outright. She contends that the ALJ failed to (1) properly analyze her credibility, (2) properly consider all of her impairments, (3) properly evaluate her obesity; and (4) properly evaluate the opinion of her treating physician. She also contends (5) that the Appeals Council erred in finding that the evidence she submitted to it was not "new and material."

### A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the claimant's symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. In determining whether statements of symptoms contribute to a finding of disability, the regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;

(2)     Location, duration, frequency, and intensity of pain or other symptoms;

(3)     Precipitating and aggravating factors;

(4)     Type, dosage, effectiveness, and side effects of any medication;

(5)     Treatment, other than medication, for relief of pain or other symptoms;

(6)     Other measures taken to relieve pain or other symptoms;

(7)     Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, 1996 WL 374186, at *6 (Jul. 2, 1996). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

Here, the ALJ found that Plaintiff's underlying impairments could reasonably be expected to cause her symptoms, but that her complaints regarding the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they conflicted with his RFC determination. The ALJ based this conclusion on medical records that showed improvement following her January 2011 lumbar fusion surgery. He also pointed out that, despite her testimony that she can't put on her own shoes and socks or shave her legs, she has normal range of motion,

strength, gait, and grip.[2] He also stated that she was able to manage many of her impairments through medication, which the ALJ concluded was inconsistent with the alleged severity of her symptoms.

As an initial matter, Plaintiff attacks the ALJ's use of boilerplate language in the credibility determination. The Seventh Circuit Court of Appeals has often criticized this language. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). But an ALJ's use of the boilerplate language does not amount to reversible error if he "otherwise points to information that justifies his credibility determination." *Pepper*, 712 F.3d at 367–68. The Court thus considers the substance of the ALJ's analysis.

Plaintiff criticizes the ALJ's credibility determination, arguing that it focuses solely on the mechanical results of clinical examinations (e.g., range of motion, gait, and strength), ignores Plaintiff's documented symptoms (e.g., pain, fatigue, myalgia, and headaches), and fails to consider all of the regulatory factors. She also contends that the evidence the ALJ did rely on does not, in fact, support his assessment of credibility.

Plaintiff's objections are well taken. For example, the ALJ did not discuss her persistent migraine headaches beyond saying at step two (and reiterated briefly in the RFC analysis) that these were managed by medication. The ALJ's discussion of her headaches mentions only a single medical record, a September 13, 2010 letter from Dr. Bayer to Dr. Corse.

While the record cited states that Plaintiff got relief from Imitrex, it noted that Plaintiff "would appear to have migraine headache with perhaps some worsening recently," that the drug

---

[2] Throughout her brief, Plaintiff uses the term "testamentary" where she means "testimonial." The former refers to wills and testaments. *See Black's Law Dictionary* 1513 (8th ed. 1999). The latter refers to evidence given by a competent witnesses under oath or affirmation. *Id.* at 1514.

Topamax had failed to control her headaches, and that Dr. Bayer was starting Plaintiff on Verapamil. (AR 260). This record does not show that the pain was "managed." To the contrary, it indicated that despite getting some relief from Imitrex, she was still suffering. More significantly, the ALJ passed over many other places in the record where Plaintiff complained of severe and debilitating headaches, including a 2011 record in which she complained that Imitrex was not working and that she needed something else.

An "ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)); *see also Terry*, 580 F.3d at 477; *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). Similarly, an "ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain." *Moore*, 743 F.3d at 1123 (citing *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004)).

Likewise, the ALJ pointed out that Plaintiff was on medication for her hypothyroidism (her thyroid was removed in 2008) and fibromyalgia and that this suggested that her conditions were managed. While Plaintiff has been taking medications for these impairments, there is no indication in the records cited by the ALJ that she stopped experiencing her alleged symptoms of fatigue or pain. On the contrary, numerous medical records state that she continued to experience diffuse pain and fatigue. Again, discussion of her subjective complaints and contrary medical records was required. *Moore*, 743 F.3d at 1123. Moreover, as with the headaches, the ALJ's analysis conflates taking medicine for something and not having any symptoms.

In the same vein, the ALJ did not discuss countervailing evidence about Plaintiff's pain in

assessing credibility. Specifically, he did not discuss the physical therapy records that note decreased range of motion and strength in her right shoulder, decreased strength in her hips, knee pain on stairs, and a positive "long sitting" test. Nor did he discuss the physical therapy records that show that she was doing aquatic therapy because she was unable to tolerate land-based exercise or gait training due to pain.

The ALJ's conclusion that these impairments had been managed and that Plaintiff was thus not credible cannot stand since he failed to create the required logical bridge. *See Zurawski*, 245 F.3d at 888–89. The Court thus finds that the ALJ's credibility analysis is "patently wrong" and warrants remand. *Shideler*, 699 F.3d at 310–11. On remand, the ALJ should consider contrary medical evidence and Plaintiff's subjective complaints in assessing Plaintiff' credibility. A fuller discussion of the location, duration, frequency, and intensity of her symptoms, the consistency of her complaints and any precipitating factors is also warranted.

## B. RFC Determination

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms,

including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id.*

Plaintiff contends that the ALJ's RFC assessment is insufficient because it fails to account for all of Plaintiff's symptoms (specifically, her alleged chronic fatigue, knee pain, diffuse body aches, and daily headaches) arising from the impairments the ALJ found to be non-severe at step two. She argues that these impairments should have been found to be severe at step two and, more significantly, that—taken as a whole—the ALJ's analysis of Plaintiff's RFC failed to account for these symptoms.

Since the ALJ found that Plaintiff had severe impairments ("degenerative disc disease of the lumbar spine, with lumbar herniation and bulging, and a history of surgery; and obesity"), the Court considers the step two discussion only insofar as it is relevant to the ALJ's RFC determination. (AR 24). As Plaintiff admits, step two is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). But "[t]his is true only insofar as the severity finding relates to meeting the required threshold in step two of the ALJ's five-step analysis." *Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520; *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010)). This is in keeping with the Seventh Circuit Court of Appeals' directive that the ALJ's

decision should be read as a whole and that it would be "a needless formality to have the ALJ repeat substantially similar factual analysis." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (citing *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985)).

In making his step two determination, the ALJ found that Plaintiff's degenerative joint disease in both knees, thyroid disorder, fibromyalgia, tendinitis of the right shoulder, headaches, pannus of both eyes, anemia, and sleep apnea had all been managed through treatment (drugs, injections, physical therapy, etc.), and did not cause more than a minimal limitation on Plaintiff's ability to work. He hence concluded that they were non-severe. With the exception of knee pain, the only other discussion of the non-severe impairments is in the ALJ's credibility analysis, where he simply restates this conclusion.

Since this case is being remanded for determination on the issue of credibility, the RFC analysis is not ripe for review since it turns on the ALJ's decision to ignore Plaintiff's subjective complaints on the basis that he found them not credible. If found credible on remand, Plaintiff's allegations about her symptoms must of course be discussed. Moreover, the ALJ's discussion of the impact of the non-severe impairments on Plaintiff's RFC is at many points thin and should be fleshed out in greater detail on remand.

### C. Obesity

The ALJ noted in his opinion that Plaintiff is very obese—she weighs about 265 pounds and stands 5' 2" tall. He found obesity to be a severe impairment, noting that, though Plaintiff did not specifically allege obesity as an impairment, he nevertheless considered its effect on her muscloskeletal, respiratory, and cardiovascular impairment listings.

Plaintiff objects that the ALJ's opinion says almost nothing about *how* obesity affected

Plaintiff's RFC. Plaintiff's point, though perhaps not on its own sufficient to justify remand, is well taken. The actual effect of Plaintiff's obesity is hardly discussed. It seems likely, as the Commissioner argued, that the ALJ's RFC determination, which provided that Plaintiff could do only sedentary work and restricted climbing and standing, was based in part on the ALJ's evaluation of obesity. But the ALJ did little to connect the dots. Thus, on remand, the ALJ is directed to explain more fully the impact of Plaintiff's obesity on her RFC.

### D. Weight to Treating Physician Opinion

Plaintiff argues that the ALJ erred by failing to properly analyze the weight given to the opinion of treating physician Dr. Corse. An ALJ must give the medical opinion of a treating doctor controlling weight as long as the

> treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p, 1996 WL 374184 (Jul. 2 1996); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf*, 602 F.3d at 875.

The referenced factors listed in paragraphs (c)(2) through (c)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. §§ 404.1527(c), 416.927(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives a good reason. *Schaaf*, 602 F.3d at 875; *Skarbek*, 390 F.3d at 503.

On January 19, 2012, Plaintiff's treating family practice physician, Dr. Corse, opined in a Physical Residual Functional Capacity Questionnaire that Plaintiff could lift ten pounds rarely, could sit, stand, and walk less that two hours in an eight-hour work day, needed to elevate her legs with prolonged sitting, and had significant limitations with her upper extremities (i.e., difficulty grasping, turning and twisting objects, and reaching). Dr. Corse also stated that she should not be exposed to dust, fumes, odors, or gasses.

The ALJ gave this opinion little weight, stating that it did not have much support in the record. He explained that the medical records consistently note that, after her lumbar fusion surgery, her gait, grip, dexterity, sensation, and strength were normal. He also stated that nothing else in the record indicates that Plaintiff had limitations of the use of her upper extremities, had any environmental limitations, or needed to elevate her legs during the day.

Plaintiff challenges this assessment on the grounds that it ignores contrary evidence,

especially Plaintiff's subjective complaints and her physical therapy notes. To begin with, as discussed above, the Court has directed the ALJ to explain in greater detail his consideration of both Plaintiff's credibility and her non-severe impairments. These determinations of course influence the extent to which the ALJ may find the treating physician's evaluation to be at odds with the rest of the record. This aside, the ALJ was correct that, at many points throughout the record, Plaintiff's physicians found her to have normal gait, grip, dexterity, sensation, and strength.

Likewise, regarding the environmental restrictions, Plaintiff does not point to anything in the record that supports Dr. Corse's opinion. Regarding leg elevation, Plaintiff argues the ALJ's analysis "ignores the fact that Dr. Corse . . . did recommend [leg elevation] in the very opinion the ALJ is rejecting." Pl. Br. 16. In other words, Plaintiff contends that because the treating Physician's questionnaire is not at odds with itself, it cannot be rejected. This is bootstrapping. The ALJ did consider this opinion and decided, reasonably, that it was at odds with the rest of the record. He thus provided a good reason for his decision to give little weight to Dr. Corse's opinion regarding leg elevation and environmental restrictions.

### E. Appeals Council

As mentioned above, Plaintiff sought review of the ALJ's decision with the Social Security Administration's Appeals Council, which denied Plaintiff's request for review on May 22, 2013. As part of her appeal, Plaintiff included some 121 pages of additional medical records.

The Appeals Council's denial of Plaintiff's petition for review states that it considered the records of Dr. Bernado Lucena from November 17, 2010, through March 22, 2012. The Appeals Council concluded that, though relevant to the time in question, these records were consistent with the other records and thus did not warrant overturning the ALJ's decision. Additional records from

Dr. Lucena, which originated after the date of the ALJ's decision, were included in the record but not discussed.

The Appeals Council also considered a number of other medical records, but concluded that these dealt with Plaintiff's medical condition after the ALJ's March 29, 2012 decision. The Appeals Council returned this evidence to Plaintiff in the event she desired to use it to support a new request for benefits. No copy of this evidence was included in the Administrative Record.

Plaintiff contends that the Appeals Council made two errors. First, that it erred in its decision not to include some eighty-six pages of evidence in the Administrative Record. Second, that it erred in deciding that the records from Dr. Lucena did not provide a basis for changing the ALJ's decision. The Court considers each in turn.

*1. The Returned Evidence*

The Appeals Council must consider all the evidence the ALJ considered as well as any "evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.976, 416.1476. But, if the evidence does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council "will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application." 20 C.F.R. §§ 404.976; 416.1476. A copy of this evidence, however, must be included in the Administrative Record. HALLEX I-3-5-20 (S.S.A.), 1993 WL 643143, at *1.

The Appeals Council's failure to include the evidence warrants remand. *Id.* As Plaintiff points out, the evidence is not before the Court, and review of the Appeals Council's decision is thus impossible. Should Plaintiff wish to resubmit this evidence on remand, the Court directs the

Commissioner to consider these records.

*2. The Records of Dr. Bernado Lucena*

Plaintiff also contends that the Appeals Council improperly rejected records relating to a September 18, 2012 MRI administered by Dr. Lucena. As the Commissioner points out, this MRI was performed some six months after the ALJ issued his ruling. The Appeals Council's opinion is confusing on this point. As mentioned, the Appeals Council stated that it considered twenty-one pages of medical evidence from Dr. Lucena, covering treatment from November 17, 2010, through March 22, 2012. It did not explicitly state that it did not consider the September 18, 2012 MRI evidence on the basis that it fell outside this window, but that is presumably what it did. The evidence from Dr. Lucena comprises some thirty-four pages in the record. Of these, the first fourteen pages, including the MRI record in question, appear to relate to visits after March 22, 2012.

However, unlike the other records originating after the relevant time period, the Appeals Council did not return these fourteen pages of Dr. Lucena's records to Plaintiff as required by the regulations. 20 C.F.R. §§ 404.976; 416.1476. Instead, it included them in the Administrative Record along with the other twenty-two pages of evidence from Dr. Lucena, but did not provide any discussion of them.

There are two problems with the Appeals Council's analysis. First, the Appeals Council erred in letting these pages fall between the cracks. It should have considered the MRI and other related records from Dr. Lucena to determine whether they were related to the relevant period. 20 C.F.R. §§ 404.976, 416.1476. If the Appeals Council determined that this evidence was not related to the relevant period of time, it should have explained why (as it did with other records) and should have returned the evidence to Plaintiff and included a copy in the record. *Id.*; HALLEX I-3-5-20 (S.S.A.),

1993 WL 643143, at *1.

Second, a determination that the October 2012 MRI did not relate to the period in question appears incorrect. On the contrary, it is, as will be seen below, both new and material. "The Social Security Administration regulations require that body to evaluate 'new and material evidence' in determining whether a case qualifies for review." *Farrell*, 692 F.3d at 771. "[R]eview of the question whether the [Appeals] Council made an error of law in applying this regulation is de novo . . . . In the absence of any such error, however, the Council's decision whether to review is discretionary and unreviewable." *Id.*, (quoting *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997) (internal quotation marks omitted).

As in *Farrell*, a determination that this evidence was not "new and material" would be erroneous. *Id.* As one might expect from an area of law as complex and bureaucratic as social security, "new and material" means different things depending on the context. When it relates to a decision by the Appeals Council,

> HALLEX I–3–3–6 explains that new and material evidence is:
>
> 1.  Not part of the claim(s) record as of the date of the ALJ decision;
>
> 2.  Relevant, i.e., involves or is directly related to issues adjudicated by the ALJ; and
>
> 3.  Relates to the period on or before the date of the ALJ decision, meaning it is: (1) dated before or on the date of the ALJ decision, or (2) post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ.

*Lomax v. Colvin*, 13-CV-331-JDP, 2014 WL 4265842, at *13 (W.D. Wis. Aug. 28, 2014) (citing

HALLEX I-3-3-6).[3] In the first place, there is no question that the evidence is "new" since it came from an MRI performed well after the ALJ issued his decision. It is also material since, as discussed below, it relates to the time period in question and to the issues adjudicated by the ALJ.

The MRI record states, in part, that there was "a small amount of nonspecific material in the left central/postereolateral region which appears to mildly contact/deviate the left S1 nerve root." (AR 879). This, and other findings, led Dr. Lucena to conclude that there was postoperative change in Plaintiff's lumbar region with spondylosis.

Plaintiff contends that this confirms her suspicion that she was suffering from neurological problems in her back despite her prior laminectomy and fusion. She contends that this supports her allegations that her back was going out again. Though the MRI report is an assessment of Plaintiff's condition at that time it was performed, it specifically mentioned that this was a post-operative change. Significantly, it provides medical support for Plaintiff's subjective allegations (made within the applicable time period) of worsening back problems and attendant difficulties walking, sitting, etc. The MRI is thus sufficiently linked to the period in question and should have been considered. The decision to disregard this evidence was thus legal error. *Farrell*, 692 F.3d at 772 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992))

The error is not harmless, either. The ALJ's RFC and credibility determinations were largely based on his perception that Plaintiff improved following her fusion surgery. Although, as the Commissioner points out, there is countervailing evidence, the MRI nevertheless bears on the decision and should have been considered by the Appeals Council.

---

[3] In the context of the sixth sentence of 42 U.S.C. § 405(g), which is not before the Court, materiality "means that there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered, and new means evidence not in existence or available to the claimant at the time of the administrative proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (internal citations and quotation marks omitted).

## F.  Request for an Award of Benefits

Finally, Plaintiff asks that the Commissioner's decision be reversed and remanded for an award of benefits. An award of benefits, however, is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe*, 425 F.3d at 356)). As is evident from the discussion above, remand, not an immediate award of benefits, is required.

## V. Conclusion

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Social Security Opening Brief of Plaintiff [DE 12], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

SO ORDERED this 30th day of September, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record